## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

JOSEPH PARKER, YVETTE HILL, and )
LOU ELLA SEYMORE, )
                       )
         Plaintiffs, )
                       )
v. )         **Case No. 22-CV-549-CVE-SH**
                       )
TULSA TECHNOLOGY CENTER, )
a/k/a TULSA TECH, )
a/k/a TULSA TECH.EDU, )
                       )
         Defendant. )

## OPINION AND ORDER

Now before the Court are defendant Tulsa Technology Center's[1] ("Tulsa Tech") motion to dismiss (Dkt. # 12), plaintiff Lou Ella Seymore's response to defendant's motion to dismiss, response in opposition to motion for summary judgment, and counter motion for summary judgment (Dkt. # 24), and defendant's motion to strike (Dkt. # 25). On December 16, 2022, pro se plaintiffs filed a complaint (Dkt. # 1) against Tulsa Tech alleging discrimination and retaliation in violation of: 1) Section 504 of the Rehabilitation Act of 1973, 2) Title II of the Americans with Disabilities Act ("ADA"), Title VI[2] of the Civil Rights Act of 1964, and Title IX of the Education Amendment

---

[1] Defendant was sued as Tulsa Technology Center, as the case caption reflects. In its motion, defendant identifies itself as "Tulsa Technology Center School District No. 18" and states that "Tulsa Technology Center School District is a political subdivision created by Oklahoma law that serves all of the territory included within Tulsa County, as well as portions of the surrounding counties." Dkt. # 12, at 6 n.1. The proper procedure for an incorrectly named party is to file a notice of party name correction, so that the Court Clerk can correct the docket sheet.

[2] Plaintiffs' complaint discusses Title VII of the Civil Rights Act of 1964, not Title IV. Dkt. # 1, at 1, 2, 8. Title VII applies to employment discrimination only, but plaintiffs allege that they were students at Tulsa Tech and do not allege they were ever defendant's employees. Therefore, the Court assumes that plaintiffs referred to Title VII in error and meant to allege those claims under Title VI, which applies to programs or services that receive federal

of 1972.[3]  Id. at 8.  Plaintiffs seek declaratory judgment, an injunction, compensatory damages, punitive damages, and applicable fees.  Id.  Defendant argues that plaintiffs fail to state a claim upon which relief can be granted, plaintiffs failed to properly serve the defendant, and some of the relief sought by plaintiffs is either moot or unavailable.  Defendant also argues that the portions of Seymore's response relating to motions for summary judgment should be stricken.  Dkt. # 25. Plaintiff Seymore argues that any service of process issues have been remedied and she has adequately pleaded her claims.  Dkt. # 24.  The deadline for plaintiffs Parker and Hill to file responses to defendant's motions has expired, and they have not filed any responses.

As a preliminary matter, the Court grants defendant's motion to strike (Dkt. #25) as it relates to any portion of Seymore's filing that relates to summary judgment.  Under Fed. R. Civ. P. Rule 12(f), a party may move to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  District courts have broad discretion in disposing of motions to strike.  Durato v. Smith, 163 F. Supp. 3d 837, 862 (D.N.M. 2015).  Motions to strike should be used sparingly and are granted only in extraordinary circumstances.  This is one such circumstance.

---

financial assistance, like Tulsa Tech.  To the extent that plaintiffs meant to assert claims under Title VII, those claims are dismissed, as plaintiffs' complaint fails to allege any facts to support such a claim because none of the plaintiffs allege they were employees of Tulsa Tech.

[3]     Defendant's motion to dismiss also addresses any claim plaintiffs may have tried to bring under 42 U.S.C. § 1983.  Dkt. # 12, at 28-29.  Plaintiff Seymore's response confirms that "[p]laintiffs did not plead § 1983."  Dkt. # 24, at 16.  While plaintiff Seymore responds for herself only and cannot respond on behalf of her co-plaintiffs, the Court finds that plaintiffs Parker and Hill also did not plead any claim under § 1983.

Under local civil rule 7.1(b), "[i]t is not acceptable to file any combination of motion, response, reply or supplemental brief." Seymore filed Dkt #24, titled, "Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Or Plaintiff's Response in Opposition to Motion for Summary Judgment & Counter Motion of Plaintiff, Lou Ella Seymore for Summary Judgment." The document contains a response to defendant's motion to dismiss, a response to defendant's non-existent motion for summary judgment, and Seymore's counter motion for summary judgment. Seymore believes that because defendant's motion to dismiss (Dkt. # 12) included an exhibit, it was converted to a motion for summary judgment and, therefore, she submitted multiple responses and her counter-motion accordingly. Dkt. # 24, at 21. Seymore is mistaken.[4] Typically, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see also David v. City & Cnty. of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996). However, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). A court may take judicial notice of "matters that are verifiable with certainty." St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979). Such matters include public records. Id.; see also Tal, 453 F.3d at 1264 n.24. Here, defendant attached as an exhibit to its motion to dismiss the entity summary information on file with the Oklahoma Secretary of State. Dkt. # 12-1. This is a public record, subject to judicial notice, and does not convert defendant's motion from a motion to dismiss to a motion for summary judgment.

---

[4]     Even if defendant's motion had been converted to a motion for summary judgment, it was still improper for Seymore to combine two briefs and a counter motion in one filing and striking the materials would still be warranted.

3

As defendant did not file any motion for summary judgment, Seymore's "response" to summary judgment and "counter motion" for summary judgment are improper at this stage in the pleading and should be stricken.  Therefore, the Court grants defendant's motion to strike (Dkt. # 25) as to any portion of Dkt. # 24 that relates to motions for summary judgment, but the response to defendant's motion to dismiss (Dkt. # 12) is not stricken, and the Court considers that response in ruling on defendant's motion to dismiss.

Tulsa Tech's motion also argues that plaintiffs had not properly served defendant as required by Fed. R. Civ. P. 4, and defendant asks the Court to dismiss plaintiffs' claims.  Dkt. # 12, at 8.  Plaintiffs initially served the registered agent for Tulsa Tech Education Foundation, which is not Tulsa Tech; thus, plaintiffs had not served the proper party.  Id. at 8.

Under Fed. R. Civ. P. 4(c)(1), a plaintiff is required to serve a summons and a copy of the complaint on a defendant within the time limit provided under Rule 4(m).  The time limit to effect service under Rule 4(m) is 90 days.  The docket sheet shows that following the initial deficient service and the filing of defendant's motion to dismiss, the Court Clerk issued another summons (Dkt. # 15) which was returned executed (Dkt. # 17) prior to the expiration of the time limit.  Defendant also appears to concede as much in its motion to strike.  Dkt. # 25, at 2 n. 2 ("[A]s asserted by [] Seymore's response to the motion [to dismiss], Plaintiff subsequently served the proper party.").  Therefore, defendant's insufficient service argument is moot and plaintiff's claims are not subject to dismissal on that basis.  The Court will consider defendant's remaining arguments for the dismissal of plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.**

Plaintiffs' complaint alleges the following:[5] plaintiffs were students at Tulsa Tech and "have documented disabilities or handicaps, and are members of other federally protected classes."  Dkt. # 1, at 1.  They state that they "were denied reasonable accommodations for the handicapped . . . [and] were subjected to hostile environment because of race, sex, and age."  Id. at 2.  They also state that they were "retaliated against because they asked for and asserted their rights" and were "denied privileges that were afforded to other similarly situated students."  Id.  The alleged claims arise out of separate events for each of the plaintiffs as summarized below.

Joseph Parker

Plaintiff Parker alleges the following:  he has "been diagnosed with Tourette Syndrome and [he] was enrolled in the Oklahoma Department of Vocational Rehabilitation Program."  Dkt. # 1, at 3.  He "requested a Tutor and was not accommodated."  Id.  He was "allowed only one (1) open-book test, thereby making [his] grades lower than the other Students [sic]."  Id.  "[D]ue to [his] disability and [Tulsa Tech]'s lack of accommodations, it was harder to 'fit in' with the other Students."  Id.

He "was also discriminated against for being a Black Male in the Cosmetology Program, (which is a non-traditional occupation for a Male)."  Id.  He was "expelled from the Cosmetology

---

[5]     While all three pro se plaintiffs sign the complaint in its closing section, it appears that, by also signing under discrete factual sections that were relevant to each of them, the plaintiffs may have contributed to only those sections of the complaint.  Therefore, the Court advises plaintiffs of the danger of unlawful practice of law and reminds plaintiffs that, while they may create and submit court filings together, they may only do so if they produced those filings, and they may not create or submit any filings on behalf of anyone other than themselves.  See Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir.2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others.").

Program, denying [him] the opportunity to complete [his] career goals, and deprived [him] of increased earning potential, and a chance for a better life." Id. Tulsa Tech's "discriminatory actions . . . caused [him] mental anguish and . . . lowered [his] self-esteem." Id. Tulsa Tech also "retained all of the Tuition and Fees paid for [his] education," meaning the funds "are no longer available to complete [his] career goals." Id. Finally, he "timely filed a Discrimination Complaint with the Department of Education Office of Civil Rights" ("OCR") and that case is "on-going." Id.

Yvette Hill

Plaintiff Hill alleges the following: she is a "Black Chickasaw Nation Citizen" who is female and has a "documented disability." Dkt. # 1, at 4. She is also a senior citizen and has an "Oklahoma Department of Public Safety issued Handicap Parking Sticker" for her vehicle. Id. at 3. "[S]ome days it is 'medically necessary' for [her] to use a walker, cane, or wheelchair and [she] need[s] to use the handicap parking space due to [her] handicap/disability." Id. Two white, male, "not handicapped" instructors, who "were not authorized by law to park in the handicap spaces, did illegally park in the handicap spaces." Id. at 4. Hill complained. Id. Tulsa Tech and "its' [sic] Representatives retaliated against [her] by installing traffic cones, thereby blocking [her] access to use Handicap parking." Id. These actions "caused [her] unnecessary pain to be able to reach [her] assigned classes." Id.

In addition, Hill alleges that Tulsa Tech "launched a campaign of harassment toward [her] which constituted a Hostile Environment." Id. This "campaign included . . . informing [Hill] that [she] was not allowed to wear a dress or a skirt, even though [she] wore pants/jeans underneath," and "it was not in the dress code." Id. Tulsa Tech also "denied [Hill] the opportunity to complete assignments" and "unjustly failed [her], . . . denying [her] the opportunity to complete the program

6

while [Tulsa Tech] kept all the tuition and fees paid." Id. These supposed "retaliation and discriminatory actions caused [her] unnecessary pain and discomfort, mental anguish, and humiliation." Id. Other students in Hill's program were not treated as she was treated. Id. Hill also "timely filed a Complaint with the DOE, OCR and the case is still going on." Id.

Lou Ella Seymore

Plaintiff Seymore alleges the following: she is a senior citizen "with documented disabilities," including "allergic rhinitis, chronic pain, and [she] wear[s] a Doctor prescribed knee brace." Dkt. # 1, at 5. She became ill after being exposed to a "leaky roof" in the room in which she attended class. Id. The roof "caused high levels of mold and mildew which exacerbated [her] allergic rhinitis." Id. Her physician treated her and she received medication, as well as a "letter/statement advising [her] to avoid mold and mildew areas." Id. Tulsa tech received a copy of this "Certified letter" and Seymore also "hand-delivered a copy to the Superintendent's Office." Id. She also filed a "504 Disability Accommodation Request," which Tulsa Tech denied and then "told [her] to wear a fan around [her] neck." Id.

Seymore "also complained about the discriminatory actions of her instructor." Id. She was "called into the office of Sam Ramsey, and Joyce McClellan was present." Id. Seymore does not allege who Ramsey and McClellan are and whether they are Tulsa Tech administrators or other agents of defendant. Seymore alleges that at this meeting, Ramsey reiterated that Seymore's "Request for Accommodation was denied," and said that the instructor's "harassing behavior, toward [Seymore], would cease." Id. Then, "on or about the following day, McClellan" asked Seymore to return to Ramsey's office as "there were additional problems to solve." Id. During this second meeting with Ramsey and McClellan, one of them told Seymore "that the problem was 'teaching

style, learning style,'" and "basically said that if [Seymore] didn't like it, [then she] should leave." Id. A few days later, Ramsey called Seymore and told her "not to return until they 'figured out what to do.'" Id.

Subsequently, Seymore was "counted 'absent with no excuse,'" and Ramsey "deactivated [Seymore's] key card" which "denied" her "entrance into all buildings." Id. At the time, Seymore's "tuition was 'paid in full.'" Id. at 6. Seymore alleges that Tulsa Tech's "intent was to maliciously cause [her] to miss excessive days, and to fail [her] for violation of the excessive absence policy." Id. Further, Seymore alleges that a "White Female had missed excessive days in combination with excessive tardiness; but was allowed to Graduate" and also "received a job referral" and was "showcased." Id.

"[I]n response to [Seymore] asserting [her] rights," defendant and its agents "purposely and repeatedly placed [Seymore] in areas that caused 'severe' allergic rhinitis and a sinus infection that required medical treatment." Id. As a result, Seymore "suffered severe respiratory and sinus congestion and pressure; and [she] experienced sinus, nasal, facial, and eye swelling and irritation." Id. At some point Seymore "was allowed to stay in" a room with better air quality, but this was "for only a couple of days." Id. Then she "was asked to leave th[at] room." Id. That room had a "poster" that said it was for "Good Old Boys Only." Id. "White Male Students were allowed to come into and pass through the room, to use the Restroom." Id.

"[E]ventually, [Seymore] was put in a dirty, dusty, room with mold and mildew . . . ." Id. She "was told that the overhead door [in the room] would remain open to allow fresh air to circulate," but her instructor "repeatedly would not open the door as promised." Id. She alleges

those actions were "willful, malicious, wanton, and with blatant and reckless disregard to [her] health." Id.

Seymore alleges that the "[s]taff and [her instructor] constantly harassed [her] and encouraged other Students in the program to harass [her]." Id. "A Student bounced a basketball on the table where [Seymore] was doing her assignments," "[a]nother person intentionally locked [Seymore] out of the lab area," and Seymore "was required to climb on top of a room" but no one else was." Id. "[W]hen it was time to come down [from the room she was on top of], [she] panicked for fear for [sic] [her] life, injury to [her] knee, as well as being stuck between the building framing" and she needed "help to get back to the floor level." Id. at 6-7. Her instructor "denied [her] the opportunity to take" an exam "along with the other Students." Id. at 7. Later, she was "granted the opportunity to take the test," but was "forced to take [it] during a 'lock down, active shooter, and fire drill,'" which impacted her allotted test time. Id. In addition, "an interview [was] conducted" during the exam, in which her instructor and the proctor "constantly talked loudly a few feet from where [she] was testing." Id. Finally, Seymore's "[c]ounselor came and humiliated [her] in front of class for tuition already paid." Id.

These alleged incidents caused not only physical injury, but also "stress, anxiety, PTSD, and depression." Id. Seymore alleges that her "education suffered and was sub-standard; because [she] was not allowed to complete Labs and did not receive the Lecture time that the other Students received." Id. She was also "not allowed to participate in the Graduation Ceremony." Id.

Seymore "timely filed a Complaint with the Department of Education OCR," which was "referred to Mediation because of [her] Age." The mediator "conducted an [un]authorized background check on [Seymore]" and was "not impartial." Id. "[A]n agreement was signed, but

9

[Tulsa Tech] Breached that Agreement." Id. Seymore then "timely, and within [her] rights, refiled the Complaint" which "is not completed." Id.

Together, plaintiffs allege that the defendant's conduct violated Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and that they were "subjected to retaliatory actions and to a hostile environment because of race, sex and age" in violation of Title VI[] of the Civil Rights Act of 1964 and Title IX of the Education Amendment of 1972. Id. at 8. Plaintiffs seek "any monetary damages including actual, compensatory, and punitive damages, lost wages from not completing the programs; cost of this suit, and acquired Attorney fees, prejudgment, and post judgment interest as provide by law" and any other remedy this Court "deems the [p]laintiffs are entitled to receive." Id. They also ask defendant to be "enjoined from discriminatory and retaliatory actions against other Handicapped or Disabled Students, as well as Minority, Female, and Aging Students." Id.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions."

10

Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant.  Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

When a plaintiff appears without counsel, the court must liberally construe the complaint. Hall, 935 F.2d at 1110.  The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  Hall, 935 F.2d at 1110.  Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ."  Id.  A reviewing court need not accept "mere conclusions characterizing pleaded facts."  Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990); see also Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and citations omitted)).  The rule of liberal construction does not permit a court to "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory

11

on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1175 (10th Cir. 1997); see also

Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) (explaining that "[t]his liberal treatment is not

without limits, and '[the Tenth Circuit] has repeatedly insisted that pro se parties follow the same

rules of procedure that govern other litigants'" (quoting Garrett v. Selby, Connor, Maddux & Janer,

425 F.3d 836, 840 (10th Cir.2005))).

### III.

Defendant argues that plaintiffs have failed to adequately allege any of the claims against it.

Dkt. # 12. Seymore is the only plaintiff who filed a response to defendant's motion to dismiss. Dkt.

# 24. She argues that her claims are adequately pleaded. Id. The Court will address each of the

plaintiffs' claims in turn.

### A.

Plaintiffs' complaint states that Tulsa Tech discriminated against them in violation of the

ADA and section 504 of the Rehabilitation Act. Dkt. # 1. Defendant argues that plaintiffs failed to

state plausible claims for disability discrimination or failure to accommodate. Dkt. # 12, at 5-17.

Seymore responds that her claims "under ADA and 504 should not be dismissed based on disability

or lack of accommodations" and that she "has a documented disability and was denied

accommodations." Dkt. # 24, at 15.

"Section 504 of the Rehabilitation Act provides that 'no otherwise qualified individual with

a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance.'" Cohon ex rel. Bass v. New Mexico Dep't of Health, 646 F.3d 717,

725 (10th Cir. 2011) (quoting 29 U.S.C. § 794(a)). Likewise, "Title II of the ADA provides that

12

'[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.'" Id. (quoting 42 U.S.C. § 12132).  Cases decided under section 504 of the Rehabilitation Act are applicable to cases brought under the ADA and vice versa.  Roberts v. Progressive Indep., Inc., 183 F.3d 1215, 1220 n.4 (10th Cir. 1999) (internal quotations omitted); see also Wilkerson v. Shinseki, 606 F.3d 1256, 1262 (10th Cir. 2010) (stating "[w]e apply the standards from the American with Disabilities Act in analyzing a Rehabilitation Act claim").

To state a prima facie case for discrimination under section 504, plaintiffs must show "(1) that [they are] 'handicapped individual[s]' under the Act, (2) that [they are] 'otherwise qualified' for the [benefit] sought, (3) that [they were] [discriminated against] solely by reason of [their] handicap[s], and (4) that the program or activity in question receives federal financial assistance." Cohon ex rel. Bass v. New Mexico Dep't of Health, 646 F.3d 717, 725 (10th Cir. 2011) (quoting Johnson by Johnson v. Thompson, 971 F.2d 1487, 1492 (10th Cir.1992)) (fourth and sixth alterations in original).  To state a claim for a violation of Title II, plaintiffs must allege that "(1) [they are] qualified individual[s] with [] disabilit[ies], (2) who w[ere] excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."  Cohon, 646 F.3d at 725 (quoting Robertson v. Las Animas Cnty. Sheriff's Dept., 500 F.3d 1185, 1193 (10th Cir.2007)).

Plaintiffs attempt to allege claims for violation of Title II of the ADA, because they allege denial of access to a public service, program, or activity due to their disabilities.  In the context of higher education, state and local governments are not permitted to exclude disabled students from

"educational programs or activities, or otherwise discriminate[] against" disabled students because of the student's disability.  Constantine v. Rectors and Visitors of George Mason University, 411 F.3d 474, 488 (4th Cir. 2005).

1.

None of the plaintiffs adequately states a plausible claim for disability discrimination under either Title II or Section 504.  First, plaintiff Parker alleges that he was diagnosed with Tourette Syndrome and was "allowed only one (1) open-book test, thereby making [his] grades lower than other [s]tudents."  Dkt. # 1, at 3.  He also alleges that he was "expelled" from the program and was "denied the opportunity to complete [his] educational program."  Id. at 2, 3.  As alleged, these facts do not demonstrate any causal link between Parker's expulsion, which denied him the public benefits, and his disability, as required to satisfy the elements of a discrimination claim.  Therefore, the discrimination portion of Parker's ADA and Rehabilitation Act claims should be dismissed.

Next, plaintiff Hill's allegations also fail to state a plausible claim for disability discrimination.  Hill alleges that she has a "handicap" and was issued a "Handicap Parking Sticker" by the Oklahoma Department of Public Safety, and that some days it is "medically necessary" that she uses a walker, cane, or wheelchair and that she needs to park in the designated handicap parking spaces "due to [her] handicap/disability."  Dkt. # 1, at 3.  After complaining about two "White Men" who parked in the designated handicap spaces without the appropriate parking sticker, Hill alleges that defendant placed traffic cones in front of the handicap parking spaces, blocking her access to them.  Id. at 4.  This meant Hill had to park in the regular parking spaces, which caused her "unnecessary pain" to reach her classes.  Id.  Later, Hill alleges that Tulsa Tech "denied [her] the opportunity to complete assignments."  Id.   Like Parker, Hill also fails to allege facts that

14

demonstrate any causal link between being denied the ability to complete assignments, the public benefit, and her disability or handicap, as required to satisfy the elements of a discrimination claim. Therefore, the discrimination portion of Hill's ADA and Rehabilitation Act claims should be dismissed.

Finally, plaintiff Seymore's allegations also fail to state a plausible claim for disability discrimination. Seymore's allegations that are relevant to her claim for disability discrimination are that she has "documented disabilities" and became ill after the leaking roof in her classroom "caused high levels of mold and mildew which exacerbated [her] allergic rhinitis." Dkt. # 1, at 5. After receiving medical treatment, Seymore provided defendant with a letter from her physician advising her to avoid mold and mildew areas and also filled out a "504 Disability Accommodation Request" form. Id. Defendant denied her 504 request and "told [her] to wear a fan around [her] neck." Id. She was then called into an office where apparent agents of defendant reiterated that her 504 request was denied. Id. Defendants allegedly "purposely and repeatedly placed [her] in areas that caused 'severe' allergic rhinitis and a sinus infection that required medical treatment" and, as a result, she "suffered severe respiratory and sinus congestion and pressure" as well as "sinus, nasal, facial, and eye swelling and irritation." Id. at 6. She was permitted to stay in a room "with better air quality" for a couple of days before she was "asked to leave" that room. Id. Eventually, Seymore was "put in a dirty, dusty[] room with mold and mildew" and, even though she was told that an overhead door would remain open to allow fresh air to circulate, defendant "repeatedly would not open the door as promised." Id. Based on these allegations, Seymore was not excluded from receiving a public benefit, nor was she discriminated against because of a disability. As it relates to her disability claims, she was not prohibited from attending class, and could continue to receive the public benefit

of the education.  Seymore does allege other facts in the complaint, but the Court understands them to relate to different claims and will address the sufficiency of those facts and claims, <u>infra</u>.  To the extent any of these or those other facts allege any discrimination against Seymore, none of them alleges any causal link to her disabilities.  Therefore, Seymore's alleged facts do not support a claim for disability discrimination and the discrimination portion of her ADA and Rehabilitation Act claims should be dismissed.

## 2.

Plaintiffs' complaint also raises a question of failure to accommodate under the ADA and § 504.  ADA regulations require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). As a result, public entities are required "to provide reasonable accommodations to disabled persons." J.V. v. Albuquerque Pub. Sch., 813 F.3d 1289, 1299 (10th Cir. 2016) (citing Robertson v. Las Animas Cty. Sheriff's Dep't, 500 F.3d 1185, 1195 (10th Cir.2007)).  "A public entity must provide a reasonable accommodation under the ADA when it knows that the individual is disabled and 'requires an accommodation of some kind to participate in or receive the benefits of its services.'"  Id. (quoting Robertson, 500 F.3d at 1197).  "[A] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation."  Robertson, 500 F.3d at 1197–98.  While title II requires states to make "reasonable" modifications to educational programs for disabled students, this is a limited duty on the states and "it does not require States to compromise their essential eligibility criteria for public programs." Constantine v. Rectors and Visitors of George Mason University, 411 F.3d 474, 488 (4th

Cir. 2005). "Additionally, the Rehabilitation Act and ADA do not guarantee 'equal results' for disabled individuals." Jackson v. Los Lunas Ctr. for Persons with Developmental Disabilities, No. CV 87-0839 JP/KBM, 2012 WL 13076262, at *76 (D.N.M. Oct. 12, 2012) (citing Cohon, 646 F.3d at 729).

In this case, plaintiff Hill fails to allege a failure to accommodate claim because she does not allege facts that support that defendant knew that she required an accommodation. She does not allege that she requested an accommodation, specifically that she required access to the handicap parking spaces, nor do the facts allege that her need for such an accommodation was obvious. Instead, she states that she complained that unauthorized persons parked in those spaces. Dkt. # 1, at 4. Complaining about unauthorized use of the handicap spaces is not the same as notifying defendant that Hill herself required access to those spaces in order to receive the benefits of her education. Further, she alleges that on "some days" she needs to use the handicap parking space. Id. at 3. However, nothing in the complaint suggests that need would be obvious to defendant, and so there is no reason to find that defendant knew that she required such an accommodation. Therefore, Hill fails to allege a failure to accommodate claim because she fails to allege facts to support that Tulsa Tech knew that she required one.

Plaintiff Seymore's failure to accommodate claim also falls short. While her initial request for an accommodation was denied, she was then permitted to use a different room for a couple of days before that permission was revoked. She was then allegedly placed in the "room with mold and mildew," but according to the complaint, this did not preclude her from participating in her course work. As such, the facts allege that Seymore did not actually require an accommodation to participate in or receive the benefits of the services and facilities at Tulsa Tech due to the alleged

disability.  Further, while she alleges facts concerning absences, those alleged facts appear to be unrelated to these disability claims.  Therefore, she fails to allege that an accommodation was required for her to participate in or receive Tulsa Tech's benefits, and so she has not alleged a failure to accommodate claim.

Plaintiff Parker's failure to accommodate claim fails because Tulsa Tech had no obligation to fulfill his requested accommodation.  Parker alleges that he requested an academic tutor but "was not accommodated."  While the Tenth Circuit has yet to consider the question, the weight of authority holds that post-secondary educational institutions such as Tulsa Tech, have no duty to provide tutoring services to a student with disabilities that are not offered to students without disabilities.  Sellers v. Univ. of Rio Grande, 838 F. Supp. 2d 677, 683 (S.D. Ohio 2012) (stating that "there is strong authority for the proposition that a postsecondary institution generally has no obligation to provide tutoring as an accommodation to persons with disabilities").  According to the § 504 regulations, recipients of federal financial assistance as defined in 34 C.F.R. § 104.3, which includes Tulsa Tech, "need not provide attendants, individually prescribed devices, readers for personal use or study, or other devices or services of a personal nature."  34 C.F.R. § 104.44.  Both agency and judicial interpretations state that this regulation "relieves a post-secondary institution from the obligation to provide tutors to students with disabilities."  Sellers, 838 F. Supp. 2d at 684 (citing Central Mich. Univ., 18 NDLR ¶ 242 (OCR Region XV 2000), Hastings College of Law, 4 NDLR (LRP) ¶ 226, 1993 NDLR (LRP) LEXIS 1168 (OCR Region IX 1993), Hood College, 12 NDLR (LRP) 127, 1997 NDLR (LRP) LEXIS 755 (OCR Region III 1997), Rancho Santiago Community College, 3 NDLR (LRP) 52, 1992 NDLR (LRP) LEXIS (OCR Region IX 1992)); see

also Bevington v. Wright State Univ., 23 F. App'x 444, 445 (6th Cir. 2001)[6] (holding that a tutorial program "is not required" under 34 C.F.R. § 104.44); Carlson v. Carroll Univ., No. 09-C-551, 2011 WL 5921445, at *13 (E.D. Wis. Nov. 28, 2011) (finding that providing a tutor is "not required" under 34 C.F.R. § 104.44).  The Court agrees with the bulk of judicial and agency decisions and finds that defendant had no duty to provide Parker with a tutor to accommodate this alleged disability.  Further, Parker does not allege any facts that could alter the applicability of 34 C.F.R. § 104.44, such as the availability of tutoring services to students without disabilities but not to him.  As defendant had no obligation to provide a tutor under the alleged circumstances, failing to do so cannot provide the basis for a failure to accommodate claim.  Therefore, his failure to accommodate claim also fails.

### B.

Plaintiffs' complaint also states that Tulsa Tech discriminated against them in violation of the Civil Rights Act of 1964.  Dkt. # 1.  Defendant argues that plaintiffs fail to state a plausible claim for intentional discrimination based on race or hostile environment.  Dkt. # 12, at 17-21.  Seymore responds that her claims "under the Civil Rights Act should not be dismissed, to include either intentional discrimination because of race or hostile environment."  Dkt. # 24, at 15.

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  The statute "prohibits only intentional discrimination."

---

[6]     This and other unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R.App. 32.1: 10th Cir. R. 32.1.

<u>Alexander v. Sandoval</u>, 532 U.S. 275, 280 (2001).   Title VI's regulations may prohibit discrimination that has a disparate impact, but there is no private right of action to enforce such regulations.   <u>Id.</u> at 293.   Therefore, plaintiffs' may bring Title VI claims for intentional discrimination, including facilitating and maintaining a racially hostile environment, but they cannot include claims for disparate impact.   <u>See</u> <u>Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty., OK</u>, 334 F.3d 928, 933 (10th Cir. 2003)  (holding that "when administrators who have a duty to provide a nondiscriminatory educational environment for their charges are made aware of egregious forms of intentional discrimination and make the intentional choice to sit by and do nothing, they can be held liable under § 601" under a hostile environment theory).

### 1.

Plaintiffs' complaint fails to allege facts to support traditional intentional discrimination claims under Title VI.   Plaintiff Parker alleges that he "was also discriminated against for being a Black Male in a Cosmetology Program, (which is a non-traditional occupation for a Male)."  Dkt. # 1, at 3.   This is Parker's only statement concerning racial discrimination; it is conclusory and the complaint does not allege any facts to support its conclusion.   While Parker alleges that he was "expelled from the Cosmetology Program," he does not allege any facts that would support it was due to his race, nor related to race in any way.   Therefore, Parker's Title VI claim should be dismissed.

Plaintiff Hill makes similarly haphazard conclusory allegations concerning racial discrimination.   She states that she is a "Black Chickasaw Nation Citizen" and that she has "been discriminated against." Dkt. # 1, at 4.   She also alleges that "other Students in the Program were not treated the way Defendant treated" her.   <u>Id.</u>  However, Hill does not allege any facts that explain how

she was treated differently from "other [s]tudents," nor does she even identify the races of those other students. Her conclusory allegations, without any factual averments to support those conclusions that she was discriminated against or otherwise treated differently from other students, cannot support a claim for racial discrimination under Title VI. Therefore, Hills' Title VI claim should also be dismissed.

Plaintiff Seymore also fails to allege factual averments to support a claim for discrimination under Title VI. She makes two references to race in her complaint. First, she alleges that a "White Female had missed excessive days in combination with excessive tardiness; but was allowed to Graduate" and also "received a job referral before graduation, and was also showcased." Dkt. # 1, at 6. Under certain circumstances, allegations that a white student was treated differently than a non-white student for the same behavior could state a prima facie Title VI case. See Bryant, 334 F.3d at 930 (finding African American plaintiffs "set forth a prima facie case of discrimination" when they "alleged that they were suspended after [a school] fight while Caucasian students who participated in the fight were not suspended"). Seymore, however, does not allege facts to support such a prima facie case. Seymore makes no reference to her own race and that alone means that the complaint lacks facts to suggest Seymore was treated differently on the basis of race. However, even assuming that Seymore is a non-white individual, the allegations still fail to allege a prima facie case because the facts, as alleged, do not support an inference that Seymore and the "White Female" had missed the same number of classes, same levels of tardiness, had the same grades or anything else that would naturally impact receiving a "job referral" or being "showcased." Therefore, these allegations do not present a prima facie case like in Bryant, where students of different races were allegedly treated differently for the exact same behavior. None of the factual averments establishes

that Seymore and the "White Female" were otherwise similarly situated, like the students in Bryant, that would present a prima facie case of discrimination based on any differences in their access to post graduation employment opportunities.

Later, Seymore alleges that she was allowed to use a room with better air quality "for only a couple of days" and was then "asked to leave th[e] room." Dkt. # 1, at 6. She alleges that the room was "for 'Good Old Boys Only,'" apparently based on a small decorative sign that reads "Good Old Boys Only" at the top and underneath, "early to bed, early to rise" followed by more words that are too blurry in the supplied image to read. Id. at 14. Below that text is an illustration of a fish, and finally, the bottom of the sign reads in large letters "[]ng club." Id. The first part of the word ending in "-ng" is obstructed by a piece of furniture, but given the context of the sign it is clear that it reads "Fishing Club." Id. What is not clear is why this is included in the section of Seymore's complaint alleging that she was permitted to work in this space for a period before being asked to leave. Based on the images of the sign and the room with the sign that Seymore attached as part of the complaint, there is no reasonable inference that this sign had anything to do with why she was asked to leave the room. She alleges that "White Male Students were allowed to come into and pass through the room, to use the Restroom." Id. at 6. Similar to the deficiencies of Seymore's allegations concerning the "White Female," this statement, combined with the information about the fishing sign, provide no allegation or inference of any discrimination based on race. Permitting students to pass through a room to access a restroom is entirely inapposite from permitting a student to work in a room. They are not comparable uses of a space and do not create an inference that Seymore was treated differently on account of her race. In addition, Seymore does not allege that she was not

permitted to pass through the room to access a restroom in the same manner as the "White Male Students."  Therefore, Seymore's claims for discrimination under Title VI should also be dismissed.

**2.**

Plaintiffs also fail to allege hostile environment claims under Title VI.  Title VI claims for intentional discrimination may include facilitating and maintaining a racially hostile environment.  See Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty., OK, 334 F.3d 928, 933 (10th Cir. 2003) (holding that "when administrators who have a duty to provide a nondiscriminatory educational environment for their charges are made aware of egregious forms of intentional discrimination and make the intentional choice to sit by and do nothing, they can be held liable" under a hostile environment theory).  "[T]he question of intent in a hostile environment case is necessarily fact specific" and "[t]he question is whether the events and inaction [as alleged] in this case reached a point where it can be fairly said that the [] administrators acted intentionally."  Bryant, 334 F.3d at 933.  The Tenth Circuit considers the test for deliberate indifference, typically used in Title IX cases, to determine whether there is a viable claim for intentional discrimination for facilitating and maintaining a racially hostile educational environment under Title VI.  Bryant, 334 F.3d at 934.  "[T]he plaintiff must allege that the [defendant] (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school."  Id. (quoting Murrell v. School Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1246 (10th Cir.1999)).

As discussed, plaintiffs make nothing more than conclusory allegations concerning racial discrimination, unsupported by factual averments.  First, it does not appear that Parker even attempts

to raise a hostile environment claim.  However, to the extent that he does, there are simply no facts that support any of the elements of a claim.  While Seymore alleges that she was called into an office and was told that a professor's "harassing behavior . . . would cease," there is no indication anywhere in the complaint that the alleged harassing behavior was based on race or that the speaker, even assuming him/her to be an administrator, would have any reason to be aware of the allegedly racially-charged hostile environment.  In her response, Seymore states that she "did complain, with specific details, about racial discrimination, and about hostile environment, to Management," but "Management chose to ignore, then helped with the discrimination and harassment."  Dkt. # 24, at 15.  These are more conclusory allegations, and neither the complaint nor Seymore's response alleges facts to support these conclusions.  At no point in the complaint does Seymore allege that she complained to Tulsa Tech's administrators about any discrimination.  Had the complaint stated as much, and contained the "specific details" she claims to raised with defendant and the facts and circumstances around that interaction, then perhaps a prima facie case would have been alleged.  Likewise, Hill alleges that defendant "launched a campaign of harassment toward [her] which constituted a Hostile Environment."  Dkt. # 1, at 4.  The "campaign" included a discussion about appropriate attire.  As alleged, it is not reasonable to believe that incident had anything to do with race.  Because the complaint is devoid of any of critical factual allegations concerning racial harassment of any kind, plaintiffs' claims for hostile environment under Title VI should be dismissed.

### C.

Plaintiffs' complaint may attempt to state that Tulsa Tech discriminated against them in violation of the Age Discrimination Act ("Age Act"), 42 U.S.C. § 6104 et seq.  Dkt. # 1.  While not

specifically referred to in the complaint, plaintiff Seymore's response states that her "claim under the Age Act should not be dismissed." Dkt. # 24, at 16.  To the extent the complaint does allege any claim under the Age Act, the Court finds that it lacks subject matter jurisdiction to hear such a claim.

The Age Act provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."  42 U.S.C. § 6102.  The statute imposes requirements that must be satisfied prior to commencing an action in this court.  An "interested person" bringing the action "shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed."  42 U.S.C. § 6104(e)(1).  The notice "shall state the nature of the alleged violation, the relief to be requested, the court in which the action will be brought, and whether or not attorney's fees are being demanded in the event that the plaintiff prevails."  42 U.S.C.§ 6104(e)(2).  However, "[n]o action . . . shall be brought . . . if administrative remedies have not been exhausted." Id.  "[A]dministrative remedies shall be deemed exhausted upon the expiration of 180 days from the filing of an administrative complaint during which time the Federal department or agency makes no finding with regard to the complaint, or upon the day that the Federal department or agency issues a finding in favor of the recipient of financial assistance, whichever occurs first."  42 U.S.C. § 6104(f).  Therefore, a plaintiff cannot bring a claim under the Age Act unless: 1) notice has been sent by registered mail to defendant and the named government officials at least 30 days before commencing the action and, 2) at least 180 days have elapsed since filing that complaint with the relevant agency and the complaint remains pending or was found in favor of defendant.

25

Here, the complaint fails to allege any facts necessary to support jurisdiction.  It does not allege that the requisite notice was mailed to defendant, the Secretary of Health and Human Services, and the Attorney General of the United States.  Further, while all three plaintiffs allege they filed OCR complaints, none of them allege how long those complaints have been "ongoing."  The complaint simply fails to allege facts necessary to support that the Court has subject matter jurisdiction of their Age Act claims.  Therefore, plaintiffs' Age Act claims must be dismissed.

### D.

Plaintiffs' complaint also states that Tulsa Tech discriminated against them in violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, et seq.  Dkt. # 1.  Defendant argues that plaintiffs fail to state a plausible claim for sex-based discrimination.  Dkt. # 12, at 23-25.  Seymore responds that her claim "under Title IX should not be dismissed" and that she "detailed repeated complaints to Management, but it did not help."  Dkt. # 24, at 16.

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Title IX is enforceable through a private right of action when the discrimination is intentional.  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).  To state a claim under Title IX, plaintiff "must show:  (1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex."  Seamons v. Snow, 84 F.3d 1226, 1232 (10th Cir. 1996).  If a plaintiff's claim against school district is based on respondeat superior or vicarious liability for the actions of one of its instructors, rather than its own direct discrimination

in the form of a discriminatory policy or some other discrimination, then a plaintiff must establish that the school district: "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." Murrell v. Sch. Dist. No. 1, Denver, 186 F.3d 1238, 1246 (10th Cir. 1999). The Supreme Court explains the rationale for this higher burden is because "[u]nder a lower standard, there would be a risk that the [defendant school district] would be liable in damages not for its own official decision but instead for its employees' independent actions." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290-91 (1998).

In this case, plaintiffs fail to satisfy either test because they fail to allege facts to support an inference that they were discriminated against on the basis of sex or, in some instances, even assuming there could be an allegation of discrimination by individual faculty, they fail to allege that administrators had notice of the alleged discrimination. Plaintiff Parker's conclusory statement that he was "also discriminated against for being a Black Male in a Cosmetology Program, (which is a non-traditional occupation for a Male)" is unsupported by any facts. Dkt. # 1, at 3. Insofar as any of plaintiff Hill's statements relate to a sex discrimination claim, she alleges that two instructors who illegally parked in handicap spots were "White Men" and she is "Female" and was "discriminated against because of" her sex, among other things. Id. at 4. The alleged fact that men improperly parked in handicap parking spaces that Hill should have had access to does not, by itself, support any inference of sex discrimination or harassment. Hill also states that Tulsa Tech "launched a campaign of harassment toward [her] which constituted a Hostile Environment." Id. This included a discussion about appropriate attire. However, even if that could be "on the basis of sex," the comments, as alleged, lack any hint of discrimination or harassment, let alone any indication that it

deprived Hill of access to the educational benefits or opportunities provided by Tulsa Tech.  As such, the complaint is devoid of any allegations to support an inference that she was discriminated against or harassed on the basis of sex.  Therefore, plaintiffs Parker and Hill's Title IX claims should be dismissed.

Plaintiff Seymore also fails to state an adequate Title IX claim.  The only reference to sex in her complaint outside of her own is the discussion of the "Good Old Boys" decorative sign in the room where she was permitted to work for some period of time.  Dkt. # 1, at 6.  None of the other alleged facts provides reference to any sex discrimination or harassment as it relates to her ability to use that room.  In her response, Seymore argues that, as it relates to her Title IX claim, she "detailed repeated complaints to Management, but it did not help."  Dkt. # 24, at 16.  Once again, the problem is Seymore's complaint does not allege facts that support this conclusion.  While Seymore's complaint alleges that she was told her instructor's "harassing behavior" would stop, Dkt. # 1, at 5, she fails to state what actually constituted that alleged "harassment" and, importantly, whether the alleged harassment was even on the basis of sex.  She then alleges that she was told to return for a second meeting, the purpose of which was "to ridicule, intimidate and to further harass" her, but again fails to allege facts to support such a conclusory allegation.  Dkt. # 1, at 5.  Later, she alleges that the "Staff and [her instructor] constantly harassed [her] and encouraged other Students in the program to harass [her]."  Id. at 6.  She then cites the following examples of the "harassment" she faced: a student "bounced a basketball on the table where [she] was doing [her] assignments," another person "locker [her] out of the lab area," she was the only person "required to climb on top of a room" and was afraid of injuring herself when it was time to come down, her instructor "denied her the opportunity to take [an exam] along with the other Students," but she then explains that she

28

was later "granted the opportunity to take the test" but it was "during a 'lock down, active shooter, and fire drill'" and her instructor and a proctor "talked loudly a few feet from where [she] was testing." Id. at 6-7. While these alleged events are certainly peculiar, none of them suggests even an iota of sexual harassment or discrimination on the basis of sex, nor any other protected class. Therefore, her Title IX claim should also be dismissed.

### E.

Plaintiffs' complaint also states that Tulsa Tech retaliated against plaintiffs in violation of the ADA, § 504 of the Rehabilitation Act, Title VI, or Title IX. Dkt. # 1. Defendant argues that plaintiffs fail to state plausible claims for retaliation under any of these statutes. Dkt. # 12, at 25-27. Seymore responds that her "claim for Retaliation is valid, and should not be dismissed." Dkt. # 24, at 16.

Claims for retaliation under any of the aforementioned statutes require causation. See Foster v. Mountain Coal Co., LLC, 830 F.3d 1178, 1186–87 (10th Cir. 2016) ("To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) he 'engaged in a protected activity'; (2) he was 'subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity'; and (3) there was 'a causal connection between the protected activity and the adverse employment action.'") (alterations in original) (quoting Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999)); Bennett v. Henderson, 15 F. Supp. 2d 1097, 1112 (D. Kan. 1998), aff'd, 172 F.3d 62 (10th Cir. 1999) ("To establish a *prima facie* case of retaliation in violation of the Rehabilitation Act plaintiff must show (1) that he engaged in activity protected under the Act, (2) that he suffered an adverse employment action subsequent to or contemporaneous with such protected activity, and (3) that there is a causal connection between the protected activity and the

adverse employment action."); Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003) ("To make a

claim for Title VI retaliation, [plaintiff] must show (1) that she engaged in protected activity; (2) that

[defendant] took a material adverse employment action against her, and (3) that a causal connection

existed between the protected activity and the adverse action.").   In the context of Title IX, the

Supreme Court's analysis explains that retaliation claims require a causal connection between the

protected activity and the adverse action:

> Retaliation against a person because that person has complained of sex discrimination is
> another form of intentional sex discrimination encompassed by Title IX's private cause of
> action.   Retaliation is, by definition, an intentional act. It is a form of "discrimination"
> because the complainant is being subjected to differential treatment.   Moreover, retaliation
> is discrimination "on the basis of sex" because it is an intentional response to the nature of
> the complaint:   an allegation of sex discrimination.   We conclude that when a funding
> recipient retaliates against a person because he complains of sex discrimination, this
> constitutes intentional "discrimination" "on the basis of sex," in violation of Title IX.

Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 173-74 (2005) (emphasis added) (citations

omitted).   Therefore, to support their retaliation claims, plaintiffs must allege facts that support a

causal connection between their protected activity and defendant's alleged adverse action.  The Court

finds that they fail to do so.

While the complaint states that defendant "retaliated" against plaintiffs, all of the references

to retaliation are conclusory and without the requisite facts necessary to support such a conclusion.

Parker's allegations contain no reference to retaliation, nor do they allege any facts or events that

would suggest any claim for retaliation.  It is not clear whether Parker intended to assert a retaliation

claim; however, to the extent that he did, that claim is dismissed as the complaint fails to allege any

facts to support such a claim.  Likewise, Seymore simply alleges that "[she] was being retaliated

against and denied privileges that were provided by law."  Dkt. # 1, at 6.  This conclusory statement

is unsupported by the factual allegations.  While Seymore does allege that she "complained" about unspecified "discriminatory actions" of one of her instructors and met with staff about it, there are no allegations that defendant then took any adverse action against her because of that complaint (nor whether the initial complaint or "discriminatory actions" were relevant to or protected under the ADA, § 504, Title VI, or Title IX in the first place).  Therefore, Seymore also fails to state a claim for retaliation.  Finally, Hill alleges that when she complained about others' unauthorized use of handicap parking spaces, "Defendant and its' [sic] Representatives retaliated against [her] by installing traffic cones, thereby blocking [her] access to use Handicap parking."  Dkt. # 1, at 4.  Even if this allegation satisfies the "adverse action" element of a retaliation claim, it is not clear if Hill properly alleges that she engaged in a protected activity.  She merely alleges that she "complained" about the unauthorized use of the handicap parking, but fails to allege to whom she made this alleged complaint.  More importantly, even if Hill's generic assertion that she "complained" supports an inference that she engaged in a protected activity, she still fails to allege the necessary causal connection between the protected activity and the adverse action.  To establish a prima facie case, Hill must allege facts that support that the appropriate decision making authority at Tulsa Tech was aware of her complaint about the parking, and then took the adverse action, blocking the spaces with cones, to prevent Hill from accessing them.  See Pierce v. Fordham Univ., Inc., 692 F. App'x 644, 646 (2d Cir. 2017) (finding plaintiff failed to establish a prima facie case of retaliation when the alleged facts did not support a conclusion the "decision maker" was aware of plaintiff's protected activity).  Hill does not allege such facts.  Hill's problem is not that she alleges contrary facts; it is that the complaint is simply devoid of enough necessary facts to causally link any adverse action

31

taken by defendant to Hill's alleged protected activity, such as it is. Therefore, Hill also fails to state a claim for retaliation.

The Court finds that plaintiffs fail to state any claim upon which relief may be granted, and so their complaint must be dismissed. Generally, a court should provide pro se plaintiffs leave to amend a deficient complaint. Reynoldson v. Shillinger, 907 F.2d 124, 126 (10th Cir. 1990). "[T]he district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint." Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006). Here, the Court does not find that would be futile to grant plaintiffs leave to amend their complaint. The Court therefore dismisses the complaint, without prejudice, for failure to state a claim on which relief may be granted, and plaintiffs will be granted leave to amend.[7]

## IV.

Because the Court will allow plaintiffs an opportunity to amend their complaint, the Court addresses the arguments raised by defendant that plaintiffs are not entitled to punitive damages and their claims for equitable relief are moot.

---

[7]     Plaintiffs should take note that while they may amend their complaint, they must abide by the pro se pleading requirements and avoid any risk of the unauthorized practice of law by contributing to each other's pleading materials. In addition, it is not entirely clear to the Court why each of the plaintiff's claims are joined together in this action. Under Fed. R. Civ. P. 20, persons may join as plaintiffs in a single action if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and there is "any question of law or fact common to all plaintiffs" that will arise in the action. Misjoinder of parties in a single action is not a reason to dismiss a case, but "the court may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. Based on plaintiffs' initial complaint, each of the alleged incidents appear to be entirely separate and unrelated to each other, and it does not appear that plaintiffs' claims arise out of a single transaction or a series of related transactions. Should plaintiffs amend their complaint and continue this action together, it is likely that they will have to identify a specific policy or custom that gives rise to their individual claims.

Plaintiffs seek punitive damages in their private actions for violations of the ADA, § 504 of the Rehabilitation Act, Title VI, Title IX, and perhaps the Age Act. Dkt. # 1. The Supreme Court held that, because of the contractual nature of Title VI, punitive damages are not available for private actions brought under the statute. Barnes v. Gorman, 536 U.S. 181, 188-89 (2002).[8] Because Title IX is interpreted consistently with Title VI, id. at 185, the Court finds that punitive damages may not be awarded in private suits under Title IX. The Supreme Court also held that "the remedies for violations of . . . the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI . . . ," id., and that "[b]ecause punitive damages may not be awarded in private suits brought under Title VI . . . , it follows that they may not be awarded in suits brought under . . . the ADA and § 504 of the Rehabilitation Act." Id., at 188. Therefore, plaintiffs will not be able to recover punitive damages for any of their private claims under the ADA, § 504 of the Rehabilitation Act, Title VI, or Title IX.

As to plaintiffs' potential Age Act claims, even if plaintiffs' amended complaint alleges facts to support subject matter jurisdiction, there is nothing within the statutory text of the Age Act the provides for an award of punitive damages. 42 U.S.C. § 6104. In fact, while the statute specifically allows for injunctive relief and attorneys' costs for private suits, it makes no mention of any monetary damages, let alone punitive damages. See 42 U.S.C. § 6104(e)(1) ("When any interested person brings an action . . . to enjoin a violation of this Act by any program or activity receiving

---

[8]     In analyzing the available remedies for violations of Title VI, the Supreme Court compared it to Title IX and explained that, because of the contractual nature of the statute, "under Title IX, which contains no express remedies, a recipient of federal funds is nevertheless subject to suit for compensatory damages and injunction, forms of relief traditionally available in suits for breach of contract"; however, "punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract." Barnes v. Gorman, 536 U.S. 181, 187 (2002) (citations omitted).

Federal financial assistance, . . . [s]uch interested person may elect, by a demand for such relief in his complaint, to recover reasonable attorney's fees, in which case the court shall award the costs of suit, including a reasonable attorney's fee, to the prevailing plaintiff."). The Court finds that monetary damages, including punitive damages, are not permitted in private suits under the Age Act. While the Supreme Court has interpreted Title VI and other statutes to permit claims for monetary damages, see Barnes, 536 U.S. 181 (2002), those are "enforceable through *implied*, rather than *express*, rights of action." Long v. Fulton Cnty. Sch. Dist., 807 F. Supp. 2d 1274, 1287 (N.D. Ga. 2011). "By contrast, the [Age Act] expressly creates a private right of action but mentions only injunctive relief. Therefore, the traditional presumption that all appropriate remedies are available must give way to Congress's express indication that only injunctive relief is available to private [Age Act] litigants." Id. (citing Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60, 70 (1992)). Therefore, punitive damages are not available for a private claim under the Age Act. Accordingly, even if plaintiffs amend their complaint to plausibly state claims under any of the aforementioned statutes, plaintiffs will not be entitled to monetary damages, including punitive damages, for such claims.

In addition, the Court finds that plaintiffs' claims for equitable relief are moot. Plaintiffs seek "declaratory judgment, injunctive relief, equitable relief" and assert their complaint is "brought to prevent the Defendant[] from maintaining a policy, practice, custom or usage of discriminatory practices." Dkt. # 1, at 2. According to the complaint, however, none of the plaintiffs remains a student at Tulsa Tech. Id. at 1 (asserting that plaintiffs "were Students enrolled at [Tulsa Tech]"). "It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" United States v. Juv. Male, 564 U.S. 932, 936 (2011) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997)).

"[T]he hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." Rhodes v. S. Nazarene Univ., 554 F. App'x 685, 690 (10th Cir. 2014) (quoting Martin–Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir.1983)). "In other words, the relief sought must have some effect in the real world." Id. (quoting Kennecott Utah Copper Corp. v. Becker, 186 F.3d 1261, 1266 (10th Cir.1999)). In Rhodes, the plaintiff was a student who was suspended by the defendant university. Id. at 688. He brought discrimination claims under the ADA and § 504 and sought equitable relief. Id. at 688-89. The Tenth Circuit affirmed that, "[b]ecause [plaintiff] no longer intends to ever attend [defendant university], [plaintiff] is not susceptible to continued injury. As such, there is no current dispute presented that is 'definite, concrete, and *amenable to specific relief*,' as required by law." Id. at 690 (quoting Jordan v. Sosa, 654 F.3d 1012, 1024 (10th Cir.2011)). In this case, plaintiff Seymore appears to have graduated from Tulsa Tech, id. at 7, while plaintiffs Parker and Hill were "denied the opportunity to complete their educational program." Id. at 2. However, none of the plaintiffs alleges any present intent to attend Tulsa Tech. As such, any equitable relief that the Court would grant would have no "effect in the real world." Rhodes, 554 F. App'x at 690. Therefore, none of the plaintiffs is entitled to equitable relief.

**IT IS THEREFORE ORDERED** that defendant's motion to strike (Dkt. # 25) is **granted,** and any portion of Dkt. # 24 that relates to motions for summary judgment, including pages 21-51, are hereby **stricken**.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss (Dkt. # 12) is **granted** pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs' complaint (Dkt. # 1) is **dismissed without prejudice.**

**IT IS FURTHER ORDERED** that any of the plaintiffs may file, within **twenty-one (21) days** of the date of this opinion and order, an amended complaint against defendant in order to cure the deficiencies identified herein.

**Failure to comply with the requirements set forth in this opinion and order will result in dismissal of this matter.**

**DATED** this 9th day of August, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

36